IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-50817
Summary Calendar
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

GERALD JOE HENSON, a/k/a Jerry Henson,

                                        Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Western District of Texas
USDC No. A-95-CR-154-6
- - - - - - - - - -
December 4, 1997
Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[1]

Gerald Joe Henson appeals his conviction and sentence for conspiracy to defraud the United States by devising a scheme to utter counterfeit securities, and for aiding and abetting the uttering of counterfeit securities, the possession of false papers to defraud the United States, and mail fraud, in violation of 18 U.S.C. §§ 2, 371, 513, 1002, and 1341. Henson raises myriad arguments in support of his appeal, none of which entitles him to relief. Accordingly, his conviction and sentence are

_____

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

AFFIRMED.  For ease of explication, we group Henson's arguments into eleven categories which we address in turn.

Henson argues first that venue did not properly lie in the Western District of Texas because none of his alleged criminal actions occurred there.  The Constitution guarantees criminal defendants the right to be tried in the state where their alleged crimes were committed, U.S. Const. art. III, § 2, cl. 3, amend. VI, and the Federal Rules of Criminal Procedure provide that crimes shall generally be prosecuted in the district in which they were committed,  Fed. R. Crim. P. 18.  For conspiracy offenses, however, the crime is considered to have occurred, and therefore venue is proper, where the agreement was formed and where any overt act in furtherance of the conspiracy took place. United States v. Pomranz, 43 F.3d 156, 158-59 (5th Cir. 1995). Similarly, venue for aiding and abetting offenses does not require that the defendant have been physically present in the district; venue is proper if the principal committed the substantive crime there.  United States v. Winship, 724 F.2d 1116, 1125 (5th Cir. 1984).  In this case, evidence showed that a portion of each substantive offense underlying the conspiracy and aiding and abetting charges brought against Henson occurred in the Western District of Texas.  Thus, venue was proper.

Second, Henson offers numerous arguments in an effort to

show that the district court lacked jurisdiction.[2]  We find these arguments to be wholly without merit.

Third, Henson raises several objections to the sufficiency of the indictment brought against him.  He argues that the indictment was defective because:  1) the conspiracy count failed to allege the object of the conspiracy with respect to him; 2) Counts Two through Five are duplicitous; and 3) the indictment failed to allege that the agreement was carried out by deceitful or dishonest means, an essential element of all the counts.[3]  Our review of the record does not reveal any indication that these objections were raised prior to trial.

Objections to defects in an indictment, with the exceptions of assertions that an indictment fails to show jurisdiction or to charge an offense, are waived if not raised before trial.  Fed. R. Crim. P. 12(b)(2), (f).  The exceptions do not cover Henson's claim regarding duplicity which is, therefore, deemed to have

---

[2]  Henson appears to raise the following jurisdictional arguments: 1) that, because he never mailed a certified money order interstate, there was no commercial nexus to support federal jurisdiction; 2) that there was no jurisdiction because the indictment does not cite implementing regulations for the statutes under which Henson was charged; 3) that the statutes under which Henson was convicted are unconstitutional because they lack enacting clauses; and 4) that the grand jury, the district court, the magistrate judge, and the U.S. Attorney involved in this case were without authority to act because no regulations were promulgated to implement the statutes under which Henson was charged, and the statutes' reach is therefore limited to territories not including the fifty states.

[3] Henson also challenges the indictment on the grounds that Counts One, Four, & Five failed to allege a commercial nexus. The crimes charged plainly do not require a commercial nexus. Accordingly, we reject this claim without further discussion.

been waived.  See United States v. Baytank (Houston), Inc., 934 F.2d 599, 608-09 (5th Cir. 1991).[4]

The remaining challenges to the indictment, claims that the indictment failed to state an essential element of the conspiracy charge, fit within the exception for objections to failure to charge an offense.  See United States v. Wilson, 884 F.2d 174, 179 (5th Cir. 1989).  If first challenged on appeal, however, "an indictment will be sufficient unless it is so defective that by any reasonable construction, [it fails to] charge an offense for which the defendant is convicted."  United State v. Wylie, 919 F.2d 969, 972 (5th Cir. 1990) (internal quotation marks and citations omitted).

Henson argues that Count One failed to charge the object of the conspiracy with respect to him because his signature was not found on any bogus securities instrument.  Henson misunderstands the requirements of a conspiracy charge.  A conspiracy under 18 U.S.C. § 371 requires: "[1] an agreement between two or more persons to defraud the United States or to violate a law of the United States, [2] that one of the persons committed an overt act

---

[4] We note that the indictment did not join multiple offenses within counts.  Thus, had we reached the merits of this objection, we would not have found it valid.  See id.  Moreover, to the extent Henson intended in his discussion of duplicity to raise a claim of double jeopardy, such an objection would not have prevailed either.  A defendant may be prosecuted for both aiding and abetting and conspiring to commit the same offense, United States v. Payan, 992 F.2d 1387, 1392 (5th Cir. 1993), and the various aiding and abetting charges brought against Henson each describe crimes with different elements.

in furtherance of the conspiracy, and [3] that the defendant possessed the requisite intent to further an unlawful objective of the conspiracy." United States v. Hopkins, 916 F.2d 207, 212 (5th Cir. 1990) (citations omitted). As this language indicates, an indictment need not allege that any particular conspirator committed any particular overt act.

The indictment against Henson alleges both an agreement to defraud the federal Government and an agreement to violate laws of the United States. The objects of the conspiracy, as clearly stated in the indictment, are interference with the collection of income tax, furnishing counterfeit securities, and using the mails to do so. Thus, the indictment is not defective in its statement of the objects of the conspiracy.

In his final challenge to the indictment, Henson asserts that Count One lacks an essential element of § 371 because it does not state that the agreement was carried out by deceitful or dishonest means.[5] "[A]n indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him and enables him to plead acquittal or conviction in bar of future prosecutions for the same offense." United States v. Hagmann, 950 F.2d 175, 183 (5th Cir. 1991). As we have already noted, § 371 has three elements.

---

[5] Henson contends that the other counts in the indictment are also insufficient because they lack allegations of deceit or dishonesty. As the Government points out, however, this contention is plainly false with respect to the other counts.

See Hopkins, 916 F.2d at 212. Each of the three is clearly articulated in Count One of the indictment. Thus, Henson was fairly informed of the charges against him, and Count One was sufficient.

Henson mistakenly relies on Hammerschmidt v. United States, 265 U.S. 182 (1924), and United States v. Caldwell, 989 F.2d 1056 (9th Cir. 1993), to argue that an explicit allegation of deceit or dishonesty is required. These cases are inapposite because they deal with situations in which the term "defraud" in § 371 and its predecessor statute is broadly construed to go beyond its lay meaning. See Hammerschmidt, 265 U.S. at 187-88; Caldwell, 989 F.2d at 1060. The charge against Henson does not raise the same concerns because it falls within the narrower, lay meaning of the term, and therefore entails the requisite sense of deceit and dishonesty without a separate allegation of such.

Fourth, Henson argues that the conspiracy count against him must be dismissed because the conspiracy counts against his codefendants were dismissed. This argument is without merit. A conspiracy count can stand against one conspirator regardless of whether alleged co-conspirators are prosecuted. United States v. Lance, 536 F.2d 1065, 1068 (5th Cir. 1976).

Fifth, Henson challenges the sufficiency of the evidence as to each count for which he was convicted.

> In evaluating the sufficiency of the evidence, [this court] must determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found

the essential elements of the offense beyond a reasonable doubt. [This court] must accept all credibility choices that support the jury's verdict.

United States v. Harris, 25 F.3d 1275, 1279 (5th Cir. 1994) (internal quotation and citation omitted). We have carefully reviewed the record and Henson's arguments with regard to the sufficiency of the evidence and find that a rational jury could have found, beyond a reasonable doubt, each element of each count for which Henson was convicted.

Sixth, Henson raises several arguments contending that the jury instructions were erroneous. He suggests first that the jury instructions were defective in that they failed to inform the jury of the distinction between an aider and abettor and a principal. This objection was not raised at trial.

Although the instructions for Counts Two through Five listed the elements of the offenses in terms of a defendant-principal, the court instructed the jury on party liability. Because the court's instructions informed the jury of the necessity of finding criminal intent and active participation on Henson's part in order to convict him of aiding and abetting, there is no plain error. See United States v. Roberts, 483 F.2d 226, 228 (5th Cir. 1973).

Henson also argues for the first time on appeal that materiality is an element of each offense for which he was convicted and that the district court erred by not giving a materiality instruction. For this point, Henson relies on United

States v. Gaudin, 515 U.S. 506 (1995), which found constitutional error in failure to give an instruction on materiality where materiality was an element of an offense charged. Henson cites a number of cases in which materiality was found to be an essential element of various criminal charges, leading to Gaudin error. He cites no authority from this circuit, however, to show that materiality is a required element of the particular charges in this case. Given the lack of direct authority on this question, it is hardly "clear and obvious" that the lack of jury instructions on this point was error as is required under the clear error standard. See United States v. Olano, 507 U.S. 725, 734 (1993).

Next, Henson argues that it was error not to instruct the jury on a deceitful-or-dishonest-means element of the conspiracy count.[6] Henson did not request such an instruction. As discussed above, this court has not recognized a deceitful-or-dishonest-means element of § 371. See Hopkins, 916 F.2d at 212. Thus, the error, if any, is not plain. Additionally, that the jury was instructed that "[t]o act with intent to defraud means to act with the specific intent to deceive or cheat," leads us to believe that the omission of a specific instruction on a deceit-or-dishonest-means element was not prejudicial even if such an

---

[6] As with his objection to the indictment, Henson appears to claim that deceitful or dishonest means are an element of each of the counts brought against him, but the claim is patently unsupported with respect to Counts Two through Five, and we therefore discuss it only with respect to Count One.

element was required.

Henson asserts that the court erred by giving a deliberate ignorance, or willful blindness, instruction. In light of the evidence adduced at trial regarding Henson's knowledge of his alleged co-conspirators' actions, and of the ineffectiveness of the payment instruments they were circulating, there was sufficient basis for a deliberate ignorance instruction. See United States v. Stouffer, 986 F.2d 916, 925 (5th Cir. 1993).

Finally with respect to instructions, Henson argues that the court erred by refusing to give a requested instruction on good faith or willfulness. The requested instruction explained that Henson's good-faith belief, or his honest mistake in judgment, would be a defense to the offenses with which he was charged.

The instructions given by the district court listed the elements of each offense charged, including the requirements of specific intent, provided definitions of "knowingly" and "wilfully," and explained that the Government had the burden of proving Henson's guilt beyond a reasonable doubt. Henson argued to the jury that he had lacked criminal intent, that he had believed the economic views he had espoused, and that, for a time, he had believed in the viability of the bogus payment instruments. Because the jury instructions substantially encompassed the requested instruction, and Henson's ability to present his good-faith defense was not impaired, the district court did not abuse its discretion in refusing the instruction.

See Stouffer, 986 F.2d at 925-26.

Seventh, Henson argues that he is entitled to a new trial because the issue of militias was raised during voir dire.

During voir dire, one of the venirepersons asked whether Henson was associated with any militia group or secessionist movement. The court asked whether such association would affect the venireperson's impartiality, and he answered in the affirmative. Following a bench conference, that person was excused for cause by the court.

Henson contends that he was deprived of an impartial trial due to prejudice resulting from the circumstances surrounding that excuse for cause. He argues that the other venirepersons were aware of the reason for the bench conference and that, in light of the publicity that the Republic of Texas and other militia groups have received, the association of the defendant with such groups tainted the jury.

"Absent an abuse of discretion and a showing that the rights of the accused have been prejudiced thereby, the scope and content of voir dire will not be disturbed on appeal." United States v. Okoronkwo, 46 F.3d 426, 433 (5th Cir. 1995) (citation omitted).

After the dismissal of the venireperson who asked about militias, the court made further inquiries, asking if any venire member had heard or read anything about the Republic of Texas and, if so, whether that information would affect their

impartiality; the court received no affirmative answers. Further, the jury was instructed to consider only the evidence from the trial, not to view statements or objections by counsel as evidence, and to refrain from assuming that any of the court's acts or statements during the trial were based on opinions on the issues in the case. Based on these considerations, we find that the district court did not abuse its discretion in its handling of the issue of militias and the Republic of Texas. See United States v. Garcia, 86 F.3d 394, 402 (5th Cir. 1996). We also find that Henson has not shown that prejudice resulted from the voir dire questioning.

Eighth, Henson argues that he did not receive a fair trial because the jury was exposed to unspecified extrinsic evidence. To the extent that the extrinsic evidence to which Henson refers is evidence regarding the activities of his alleged co-conspirators that went to establishing the elements of the conspiracy charge, such evidence was admissible against him. If Henson means to refer to some other evidence as extrinsic, he has relinquished this point of appeal by failing to provide an argument for this court's consideration. See Fed. R. App. P. 28(a)(6); Trust Co. of La. v. N.N.P. Inc, 104 F.3d 1478, 1485 (5th Cir. 1997). We have throughout this appeal read Henson's brief liberally because he is a *pro se* litigant, but we will not generate arguments out of whole cloth on his behalf. See Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995).

Ninth, Henson argues that the jury was prejudiced against him because it had knowledge that some of Henson's alleged co-conspirators had already been convicted. Henson did not object at trial to the testimony that introduced this information, and we therefore review for plain error. Myers, 104 F.3d at 80.

Under Federal Rule of Evidence 403, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979). Rule 403's gatekeeping effect should be applied "cautious[ly] and sparingly]." Id.

Two of Henson's alleged co-conspirators, O'Neill and Slater, testified at trial. Because evidence of their convictions was permissible under Rule 609, and in light of the cautionary instruction given by the court concerning testimony of accomplice witnesses, the prejudicial effect of the evidence did not substantially outweigh its probative value. See United States v. Borchardt, 698 F.2d 697, 701 (5th Cir. 1983).

Testimony concerning alleged co-conspirator Johnston's conviction came in during the cross-examination of defense witness Ann Henson, defendant-Henson's wife. The probative value of the evidence concerned the timing of Johnston's conviction:

Henson and his wife sold a book, which had a chapter promoting the use of the bogus payment instruments, after Henson had knowledge of Johnston's conviction, which arose from the promotion and use of those instruments. The probative value of this evidence, which went to negating Henson's defense of being an unwitting victim of the bogus instrument scheme, was not substantially outweighed by any prejudicial effect. See Fed. R. Civ. Pro. 403.

The convictions of two other alleged co-conspirators, Wilkins and Forester, were mentioned when Slater and O'Neill were asked to list the codefendants in their conspiracy prosecutions. Any prejudicial effect of introducing these additional convictions, even if it outweighed the probative value of the testimony, did not affect Henson's substantial rights because the jury would in any event have been aware--because of trial testimony that we have just explained was proper--of the convictions of three of Henson's alleged co-conspirators. Thus, we find no plain error with respect to the admission of any of the evidence regarding convictions of Henson's alleged co-conspirators.

Tenth, Henson challenges the district court's sentencing determination on several grounds. We review the district court's application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error. United States v. Peterson, 101 F.3d 375, 384 (5th Cir. 1996).

Henson argues first that the district court erred in basing his offense level in part on losses of $61 million when there was no actual loss.[7]  Henson's base offense level was 6, pursuant to U.S.S.G. § 2F1.1(a),[8] and the district court added seventeen levels based on a loss calculated to be approximately $61 million.  At sentencing, both sides agreed that the $61 million figure reflected the total face value of the bogus instruments uttered by the co-conspirators and placed into commerce.

Henson argues that it was improper to use the $61 million figure in determining his sentence because no one suffered this as actual loss.  He also appears to challenge the figure as an assessment of intended losses insofar as it stems from the criminal activities of his co-conspirators.  The Government does not contend that there were actual losses, but that the Sentencing Guidelines direct that intended losses be taken into account.    The Sentencing Guidelines prescribe that intended loss be considered where it can be determined.    Section 2F1.1, comment (n.7).  They also indicate that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" shall be taken into account

---

[7]  Henson also seems to argue that the allegation of a $61 million loss prejudiced his trial.  Henson points to no place in the record where the Government alleged a $61 million loss at trial, and our review of the record finds such an allegation only in the presentencing report.  Thus, we discuss the allegation of this loss only with respect to the sentencing.

[8]  The district court used the 1995 Sentencing Guidelines to determine the appropriate sentencing range.

in sentencing. U.S.S.G. § 1B1.3(a)(1)(B). In light of Henson's testimony admitting that he printed batches of the blank instruments used in the conspiracy, the district court's implicit finding that the $61 million figure was reasonably foreseeable to Henson is not clearly erroneous.

Henson next argues that the district court erred by granting a two-level increase in Henson's offense level based on a finding of obstruction of justice pursuant to U.S.S.G. § 3C1.1. The district court's finding of obstruction of justice was based on the probation officer's recommendation, which cited Henson's refusal to comply in a timely manner with a court order to provide handwriting samples, and Henson's failure to testify truthfully regarding his involvement with a bogus instrument scheme in California. When Henson objected to the proposed adjustment prior to sentencing, the district court heard testimony from the officer who had served Henson with the court order concerning handwriting samples. We have reviewed that testimony, and find that the district court's finding was not clearly erroneous.

Henson also challenges his sentence on the grounds that his offense level should not have been increased by two for "more than minimal planning" pursuant to U.S.S.G. § 2F1.1(b)(2). More than minimal planning is present when a case involves repeated acts over a given period or more planning than what would be typical for the offense in a simple form. U.S.S.G. § 1B1.1,

comment.(n.1(f)); see id. 2F1.1, comment.(n.2). In light of Henson's extended involvement with his co-conspirators, which included his printing checks, videotaping one of their seminars, and promoting and selling the bogus payment instruments, the district court's finding of more than minimal planning is not clearly erroneous. See United States v. Clements, 73 F.3d 1330, 1340-41 (5th Cir. 1996).

Eleventh, Henson argues that he received ineffective assistance of trial counsel and that he has been denied effective assistance of appellate counsel. We decline to review Henson's claims of ineffective assistance of trial counsel, without prejudicing his opportunity to raise such claims in a postconviction proceeding. See United States v. Higdon, 832 F.2d 312, 314 (5th Cir. 1987). In light of Henson's proceeding *pro se* on appeal and the lack of any request for appellate counsel, his claim regarding appellate counsel is frivolous.

On the remaining issues raised, we detect no error. For the foregoing reasons, we AFFIRM.